Tri-Borough Transportation Corp. v. Commissioner.
Tri-Borough Transp. Corp. v. Commissioner
Docket No. 6712.
United States Tax Court
1946 Tax Ct. Memo LEXIS 258; 5 T.C.M. (CCH) 105; T.C.M. (RIA) 46049; February 26, 1946
Jacob Rabkin, Esq., Mark H. Johnson, Esq., and Arnold Finkenthal, Esq., 1450 Broadway, New York 18, N. Y., for the petitioner. Bernard J. Long, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent has determined deficiencies *259 in tax and penalties for the calendar years 1940, 1941, and 1942, as follows: INCOME TAX
Year
Deficiency
5% Penalty
1940
$1,242.37
$62.12
1941
716.26
1942
902.98
DECLARED VALUE EXCESS-PROFITS TAX
Year
Deficiency
5% Penalty
1940
$1,221.09
$61.05
1941
376.12
1942
454.23
EXCESS PROFITS TAX
25%
5%
Year
Deficiency
Penalty
Penalty
1940
$431.39
$107.85
$21.57
Petitioner having conceded certain adjustments made by respondent, four questions remain for decision: 1. Whether the evidence establishes that petitioner was indebted to Meyer and Ike Luckman during the years in question, and, if so, whether it was entitled to interest deductions accrued but not paid on the said indebtedness. 2. Whether petitioner is entitled to deduct as salaries amounts paid to Annie Luckman during the taxable years 1939 to 1942, inclusive. 3. Whether petitioner was negligent in the preparation of its 1940 return, thereby becoming subject to penalty under section 293 (a) of the Internal Revenue Code. 4. Whether petitioner's failure to file an excess profits tax return for 1940 *260 was not due to reasonable cause, thereby subjecting it to penalty under section 291 (a) of the Internal Revenue Code. Findings of Fact Petitioner is a New York corporation, organized on January 15, 1938. Its income tax returns for the years in question, Forms 1120, were filed with the collector of internal revenue for the first district of New York. During the taxable years involved it was engaged in the trucking business, transporting perishable fruits and vegetables and flour. It maintained offices in Brooklyn and in New York City, employed 50 to 60 persons and operated 20 to 25 trucks. Its gross receipts in 1940 were $145,764.09; in 1941, $141,547.92; in 1942, $214,449.90. It was successor to the same business operated as a partnership prior to 1937 by two brothers, Meyer and Ike Luckman, which partnership was known as Luckman Brothers. Because of the difficulty which Luckman Brothers experienced in securing licenses in their own names to operate their trucks, the partnership name was changed to E and A Transportation Co., E and A representing Ethel and Annie, the respective wives of Meyer and Ike Luckman. There was no actual transfer of the business, *261 property, and other assets to Ethel and Annie Luckman by the brothers. Upon the organization of petitioner, 200 shares of common stock were issued, 100 shares each to Leo and Sidney Luckman, the sons of Meyer Luckman. Neither paid anything for the stock. The certificate evidencing Sidney's 100 shares was endorsed in blank by him. He was not active in the business, as he was then a student at Columbia University. During the years in question Leo Luckman was petitioner's president. On petitioner's tax returns for the years 1939 through 1941, subscribed and sworn to by Leo Luckman, it is recited that petitioner's stock was owned by him and by his brother Sidney. On the 1942 return, which he also signed and swore to, it is recited that petitioner's stock is owned by him and by his cousin, also named Leo Luckman. Since its inception petitioner's books of account have been kept by Louis Markheim, a public accountant and tax consultant. They were established on the accrual method. He also served as accountant for E and A Transportation Co.
The original opening entries on petitioner's books show an account for loans payable to Meyer and Ike Luckman of $18,660.11 and $1,553.63, respectively. *262 These entries are explained in the petitioner's journal as follows: (To record upon the books of the Tri Boro Transportation, the above assets and liabilities purchased from the E & A Transportation Co., as per agreement entered There is no evidence as to the existence of such an agreement or its terms. The books of Luckman Brothers were the source of the information as to the loans payable. During the years 1940, 1941, and 1942, interest was accrued on petitioner's books on these accounts in the amounts of $1,130.25, $1,203.99, and $1,263.59 for said years, respectively, which interest had not been paid, as of the date of the hearing in this proceeding (November, 1945). The opening entries on petitioner's books also showed accounts in the name of Ethel and Annie Luckman, designated "Special." Each account was credited with the sum of $25,000, which entries were offset by a debit to goodwill in the amount of $50,000. Respondent, in his deficiency notice, disallowed the claimed deductions for interest on the alleged debts to Meyer and Ike Luckman under section 24 (c) of the Internal Revenue Code on the theory that the stock of petitioner was owned by *263 or for Meyer and Ike Luckman. An additional ground asserted at the hearing was that respondent did not admit the existence of bona fide indebtedness of petitioner to Meyer and Ike Luckman in the taxable years. During the year 1938 payments of $4,310 each were made to Ethel and Annie Luckman by petitioner. These were charged on its books to their special accounts and not entered as items of expense. During the year 1939 payments of $4,480 each were made by petitioner to Ethel and Annie Luckman and were charged to their special accounts and not entered as an item of expense on petitioner's books or claimed as such on its 1939 tax return. During the year 1940, payments of $4,160 each were made to Ethel and Annie Luckman and were charged on petitioner's books to "Wages and Salaries." As an explanatory note to this entry it is stated in petitioner's ledger: "(Salaries for year, as per Resolution 1/1/40)." There is no record of such resolution having been adopted by petitioner. During the year 1941 payments of a like amount were made to Ethel and Annie Luckman and were charged on petitioner's books to "Fees," and deducted as such on petitioner's income tax return for that year. *264 During the year 1942 payments of $4,240 each were made to Ethel and Annie Luckman, which were likewise charged to "Fees," and deducted as such on petitioner's income tax return for the year. Ethel and Annie Luckman performed no services for petitioner and were not employed by it during the period from 1938 to 1942, inclusive. Respondent disallowed the deductions for salaries claimed for Ethel and Annie Luckman for the year 1940, and disallowed the amounts deducted as fees on petitioner's income tax returns for the years 1941 and 1942. Petitioner did not assign as error the action of respondent in disallowing the amounts paid to Ethel Luckman as alleged salaries. It was conceded by petitioner that the amounts so paid her were not deductible, and that Meyer Luckman rendered no services to petitioner for the years in question. Petitioner never paid any amount directly to Ike Luckman as salary. No income tax returns were filed by Ike Luckman for the years involved, showing receipt by him of income from petitioner. Markheim prepared tax returns for Ethel and Annie Luckman, reporting the amounts received from petitioner as "Salaries and other compensation for personal services. *265 " Ike Luckman was indicted in Kings County, State of New York, for conspiracy to obstruct justice. He was not apprehended at the date of the indictment and was not arraigned until April, 1940, when he pleaded guilty to the indictment, and was given a suspended sentence of one year. At the time, he was in ill health. Ike Luckman was not in the employ of petitioner during the years 1938, 1939, and the first ten months of 1940. He was in the employ of petitioner from November, 1940, through the year 1942, serving in the capacity of general manager at a salary of $80 per week. The reasonable value of his services was $80 per week. At his request, Ike Luckman's salary was paid to his wife, Annie Luckman. Petitioner's net income for 1939, as adjusted in a report of respondent dated January 27, 1941, was $233.15. This included no allowance for salary payments, if any, to Ike Luckman. Meyer and Ike Luckman were the actual owners of petitioner's stock. Petitioner failed to file an excess profits tax return for the year 1940, and such failure to file was not due to reasonable cause. The deficiencies for the year 1940 are due to negligence on the part of petitioner Opinion *266 Although it would be difficult to find support in the record for the existence of the indebtedness upon which the deduction of interest is claimed, this proceeding need not rest on a mere failure of proof. The only conclusion to be drawn from the credible evidence is that the two brothers who originally owned the business continued to be the beneficial holders of all of petitioner's capital stock throughout the period in controversy. Both had exposed themselves to personal difficulties which made it reasonable to eliminate their names from the formal records. But there is no evidence of a gift of the business or of any interest in it; the testimony shows affirmatively that those in whose name the property stood from time to time paid nothing for it; and the records themselves, coupled with such insubstantial testimony as was produced, are so inconsistent with respect to actual ownership that no finding so adequately fits the situation as that the two brothers were at all times its true proprietors. This determination supplies the only missing requirement for application of the provisions of Internal Revenue Code, section 24 (c), since the interest in question *267 was never paid in cash; it was not taken up in the personal returns of the supposed creditors, and all of petitioner's stock would be attributed to either one of the brothers under the definition of family stock ownership contained in section 24 (b) (2), (B) and (D). Hosch Brothers, 3 T.C. 279. It follows that the deduction for interest must be disallowed. On the salary issue it seems clear that neither of the wives performed any services. Petitioner has abandoned its contentions as to them. While the failure to report any compensation for either brother casts doubt on the asserted payment for Ike Luckman's services, the disbursement seems to have been real enough and his services were shown to justify a compensation of $80 a week - the amount charged on the books as "fees" paid to his wife. If there were any question here of reporting as one person's income the proceeds of services performed by another, an unfavorable disposition would clearly be required. Cf. Lucas v. Earl, 281 U.S. 111. And certainly the loose and unsatisfactory treatment accorded the deductions should not be condoned, nor freed of the charge of negligence. But the deduction itself *268 seems to be supported by the performance of adequate services, and we are not prepared to disallow it entirely. From all the evidence, however, we have been able to determine as set forth in our findings of fact, only that Ike Luckman's services to the business were performed after the closing part of the year 1940. Both the 5 percent negligence penalty and the 25 percent penalty for failure to file an excess profits tax return must be sustained. The method of keeping petitioner's books, the complete failure of any apparent effort to maintain accurate records or file correct returns, and the insubstantial nature of the explanations make it impossible to avoid the conclusion that the most charitable view to be taken of petitioner's conduct is that it was negligent. On that theory, incidentally, the contention may also be disposed of that petitioner is being accused of fraud and hence that respondent carried the burden of proof. But see Snell Isle, Inc. v. Commissioner (C.C.A., 5th Cir.), 90 Fed. (2d) 481, certiorari denied, 302 U.S. 734; Sellmayer Packing Co. v. Commissioner (C.C.A., 4th Cir.), 146 Fed. (2d) 707. There is no occasion to presume *269 that the various inadequacies and errors in petitioner's returns were fraudulent, in view of respondent's theory that they were due to culpable negligence. Cf. Kastel v. Commissioner (C.C.A., 5th Cir.), 136 Fed. (2d) 530. The record contains no evidence as to the reason for failure to file an excess profits tax return. The penalty is remitted where the failure to file is due to reasonable cause. But where there is no evidence whatever as to the existence of any cause, its reasonableness can scarcely be assumed. See Blenheim Co., Ltd. v. Commissioner (C.C.A., 4th Cir.), 125 Fed. (2d) 906, 912; Georday Enterprises v. Commissioner (C.C.A., 4th Cir.), 126 Fed. (2d) 384, 388. Respondent did not err in imposing the penalties. Decision will be entered under Rule 50.